[ECF No. 189]

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

THE BOARD OF TRUSTEES OF THE
INTERNATIONAL UNION OF
OPERATING ENGINEERS LOCAL 825
PENSION FUND et al.,

        **Plaintiffs,**

    **v.**

DELAWARE VALLEY CRANE
RENTAL, INC. et al.,

        **Defendants.**

Civil No. 17-8567 (ESK/SAK)

## OPINION AND ORDER

This matter is before the Court on Defendants Delaware Valley Crane Rental, Inc. and J.L. Dobbs, Inc.'s (collectively, "Defendants") application for reimbursement of fees and costs relating to Plaintiffs' substitute expert witness and expert report, ECF No. 189.[1]  The Court received the opposition of Plaintiffs, ECF No. 190.  The Court exercises its discretion to decide the application without oral argument. *See* FED. R. CIV. P. 78; L. CIV. R. 78.1.  For the reasons to be discussed, Defendants' application is **DENIED**.

---

[1] Plaintiffs consist of the Boards of Trustees of the International Union of Operating Engineers Local 825 Pension Fund, Operating Engineers Local 825 Welfare Fund, Operating Engineers Local 825 Apprenticeship Training and Re-Training Fund, Operating Engineers Local 825 Supplemental Unemployment Benefit Fund, Operating Engineers Local 825 Saving Fund, and Operating Engineers Local 825 Profit Sharing Fund, formerly known as Operating Engineers Local 825 Annuity Fund (collectively referred to herein as "Plaintiffs").

I.    **BACKGROUND**

The parties are familiar with the factual background and procedural history of the case so only the most salient points will be set forth herein.  Plaintiffs filed this action against Defendants on October 18, 2017. *See* Compl., ECF No. 1.  After more than six years of litigation, the case was ready for trial, with the parties' Joint Final Pretrial Order entered on the docket, ECF No. 162, and a bench trial scheduled for July 15, 2024, ECF No. 173.[2]  On June 11, 2024, Plaintiffs filed a letter to advise that their liability and damages expert witness, Terrence Mooney, CPA, had been involved in a very serious accident and would not be available to testify at the trial. ECF No. 174. Plaintiffs followed up with another letter providing further details of the accident as follows:

> As we previously advised, our liability and damages (expert) witness was recently involved in a very serious accident.  We can share in this letter, at this time, that he was struck by a motor vehicle when bicycling in Nevada, and suffered a serious cervical/spinal injury, and is under ongoing medical care to both treat and (hopefully) recover from this severe injury.  As a result of his present medical condition, he is unable to testify at trial both now and, in all candor to the Court and fairness to our adversary, almost assuredly in 2024.

Pls.' Letter, June 26, 2024, at 1, ECF No. 176.  Plaintiffs then formally requested that the trial be adjourned and provided "proposed requests" and "suggestions for dealing with [Mr. Mooney's] sudden unavailability." *Id.* at 1–2.  One of these entailed a request to substitute their expert witness subject to the condition that the substitute would "be limited to proffering findings and opinions substantially similar to those presented in Mr. Mooney's expert report." *Id.* at 2.

On July 1, 2024, the Honorable Edward S. Kiel, U.S.D.J., conducted a pretrial conference with the parties. ECF No. 178.  In light of uncertainty of Mr. Mooney's availability and the parties mutual desire that he would be available to testify at some point, the trial was adjourned *sine die*,

---

[2] The trial was originally scheduled for March 11, 2024, but was adjourned several times thereafter.  The case was then reassigned to the Honorable Edward S. Kiel, U.S.D.J., ECF No. 169, and the trial rescheduled to July 15, 2024. ECF No. 173.

and a status conference was scheduled for early September. *See* Hr'g Tr. 4:19–25, 5:7–14; 8:24, ECF No. 180; *see also* ECF No. 179.  At this conference, Plaintiffs indicated that they were unable to confirm Mr. Mooney's availability or their need for a substitute expert. *See* Hr'g Tr. 4:10–25, Sept. 9, 2024, ECF No. 183.  A follow-up status conference was scheduled for November 5, 2024. ECF No. 181.  Immediately following this conference, Plaintiffs wrote to the Court at Judge Kiel's direction seeking a case management conference to address the logistics concerning their retention of a substitute expert witness. *See* ECF No. 185.

On November 7, 2024, the Court held a status conference to address Plaintiffs' requests. The Court provided Plaintiffs with ninety (90) days to retain a substitute expert and for the expert to submit a report.  While acknowledging Plaintiffs bore no fault, Defendants maintained that they were prejudiced by Mr. Mooney's substitution and intended on seeking reimbursement of fees and costs relating thereto.  As such, the Court directed Defendants to file the instant application.[3] *See* Am. Scheduling Order ("ASO") ¶ 1, Nov. 7, 2024, ECF No. 187.

Defendants assert that they are entitled to all reasonable attorney's fees and costs and expert fees and costs incurred in connection with, and stemming from, Plaintiffs' substitute expert. *See* Defs.' Appl.  Specifically, Defendants seek reimbursement "for all the time, effort, and expense they have incurred relating to the now-withdrawn Mooney." *Id.* at 5.  Alternatively, they seek compensation for all attorney's and expert fees and costs incurred henceforth, "including, without limitation, all events outlined in the Court's [ASO], *Daubert*/Rule 702 motions, any revisions to

---

[3] The Court must note that, after a follow-up status conference on January 22, 2025, the parties were directed to advise the Court whether they were mutually interested in a settlement conference. ECF No. 191.  On January 29, 2025, the parties jointly wrote to the Court to advise that they were interested in pursuing mediation. ECF No. 192.  The action was subsequently referred to mediation on March 6, 2025. ECF No. 200.  Given this development, the parties agreed to hold Defendants' application in abeyance pending the outcome of the mediation.  On November 14, 2025, the Court was advised that the mediation was not successful. *See* ECF No. 216.

the pretrial memorandum relating to the experts, and trial preparation focused on the substituted/rebuttal experts." *Id.* at 6.  Defendants contend the case law supports their requests, even in the absence of any evidence of bad faith on the part of Plaintiffs. *See id.* at 2.  Defendants also contend their request for pre-substitution reimbursement is supported by Plaintiffs' ability to recover fees and costs from Mr. Mooney under 29 U.S.C. § 1132(g)(2), ERISA's fee-shifting mechanism. *See id.* at 5 (alleging these "sunken costs" are unduly prejudicial because this option is unavailable to Defendants).  As such, Defendants argue their application should be granted.

Plaintiffs oppose Defendants' application.  In sum, Plaintiffs assert that they are not entitled to reimbursement for any fees and costs relating to the substitution of Mr. Mooney. *See* Pls.' Opp'n at 2–5.  Plaintiffs contend that cases in which parties have been awarded fees and costs relating to the substitution of an expert witness generally include some evidence of bad faith, fault, or tactical maneuvering on the part of the party making the substitution. *See id.* at 2 (citation omitted).  They further contend that "where a party's need to substitute its expert arises from the illness or death of its original expert, attorneys' fees and other expenses should not be awarded to the other party." *Id.* at 3.  Plaintiffs argue that this amounts to punishing the party seeking the substitution. *See id.* (citation omitted).  Plaintiffs further argue that the cases relied upon by Defendants are factually inapposite to the matter at hand. *See id.*  Lastly, Plaintiffs characterize Defendants' "sunken costs" argument as "outrageous" and "exceeded only by its callousness." *Id.* at 5.  For these reasons, Plaintiffs maintain that Defendants' application must be denied in its entirety.

## II.    **DISCUSSION**

### A.  **Legal Standard**

Federal Rule of Civil Procedure 26 prescribes that parties must disclose the identity their expert witnesses, as well as their expert reports, pursuant to scheduling orders issued by the court.

*See* FED. R. CIV. P. 26(a)(2).  Each party must supplement such disclosures "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." FED. R. CIV. P. 26(e)(1)(A).  For experts, this extends to "information included in the report and to information given during the expert's deposition." FED. R. CIV. P. 26(e)(2).  The failure of a party to disclose or supplement as required by Rules 26(a) and 26(e) will result in the information being excluded "unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). In addition to or instead of exclusion, the court may order other sanctions, such as the payment of reasonable expenses, including attorney's fees, caused by the failure. FED. R. CIV. P. 37(c)(1)(A).

In the context of sanctions concerning the substitution of an expert witness, the case law is heavily fact dependent—procedurally and substantively.  Generally, "some evidence of bad faith, fault, or tactical maneuvering on the part of the" substituting party exists in cases in which courts have awarded costs and expenses relating thereto. *Doctor's Assocs., Inc. v. QIP Holder LLC*, No. 06-1710, 2009 WL 5184404, at *4 (D. Conn. Dec. 23, 2009); *see, e.g.*, *Lithuanian Com. Corp. v. Sara Lee Hosiery*, 177 F.R.D. 205 (D.N.J. 1997) (affirming, in part, the magistrate judge's order imposing sanctions on the plaintiff for its "eleventh hour substitution," which was precipitated by the plaintiff learning its expert witness was unfit and unqualified to serve as such at his deposition). Where the need to substitute arises out of the illness or death of a party's expert witness, at least one court has found that fees and expenses should not be awarded because it would amount to punishing the party seeking the substitution. *See Morel v. Daimler-Chrysler Corp.*, 259 F.R.D. 17, 23 (D.P.R. 2009) (finding "the untimely discovery disclosures substantially justified and harmless" because the "discovery violation was an isolated incident that could not have been prevented by the defendant who had no forewarning of the illness of its expert"); *but see Nike Inc. v. E. Ports Custom Brokers, Inc.*, No. 11-04390, 2024 WL 150088 (D.N.J. Jan. 12, 2024) (ordering award of

reasonable fees and costs relating to the plaintiff's substitute expert witness after its original expert was rendered unavailable due to his declining health and had failed to timely apprise the plaintiff of his inability to continue with the case).

**B. Analysis**

Here, the Court finds Defendants' application must be denied because the substitution was necessitated by circumstances that were completely out of Plaintiffs' and Mr. Mooney's control. In other words, the untimely disclosure of Plaintiffs' substitute expert witness, which Defendants did not oppose, was substantially justified. The Court is mindful of the complexity of the case, the inconvenient procedural posture at the time of the substitution, and the costs inherently incurred as a result thereof. However, the rule is clear that sanctions are warranted "unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). In this case, the late disclosure is substantially justified because a critical expert witness was involved in a tragic accident which rendered him unavailable after the discovery deadlines had passed. The late disclosure is likewise harmless because it is not materially prejudicial to Defendants.

Similar to *Morel*, Mooney's accident "falls squarely within the category of circumstances that require a late disclosure; the only question regarding justification is whether the party waited too long to notify the Court of the need for a new expert." 259 F.R.D. at 20 (citations omitted); *See id.* at 21 (noting that, even if the court found the expert's death did not provide the defendant with a substantial justification, the court would otherwise "find the substitution to be harmless"). Here, the accident took place in May of 2024. On June 11, 2024, Plaintiffs advised the Court of the accident and Mr. Mooney's inability to appear for the July 15, 2024 trial. *See* ECF No. 174. Plaintiffs had no control over this unforeseeable and tragic accident. Nevertheless, they promptly advised the Court of its occurrence and the apparent consequences flowing from it. Approximately

6

two weeks later, Plaintiffs provided further details of the accident and Mr. Mooney's condition and advised of his inability to participate in the case for the foreseeable future. *See* ECF No. 176. They also submitted proposals and suggestions for dealing with his sudden unavailability so the issue could be addressed more fully at the upcoming pretrial conference before Judge Kiel. *See id.* In light of the foregoing, the Court finds it evident that Plaintiffs did not wait too long to notify the Court of their need for a new expert.  Rather, Plaintiffs promptly took action to apprise the Court and all parties of the accident, Mr. Mooney's inability to appear for trial, and their potential need to substitute Mr. Mooney given the uncertainty surrounding his recovery.

The untimely disclosure is harmless because it is not materially prejudicial to Defendants. Defendants will not be prejudiced since they had notice of the possibility of the substitution for nearly five months, which was contemplated by all parties and the Court at the outset; *see* Hr'g Tr. 4:13–5:24, July 1, 2024, ECF No. 180; Defendants will not be surprised by new subject matter, new theories of liability, or new calculations of damages since the parties agreed to restrict the substitute's findings and opinions to be substantially similar to those presented by Mr. Mooney, which was also contemplated at the outset, *see id.* 4:15–24; and lastly, they have had ample time to formulate a rebuttal report and prepare for cross-examination.  To the extent that Defendants believe the substitute expert's report exceeds the scope of Mr. Mooney's, they are free to challenge it by filing the appropriate motions, as they seemingly already have. *See* ECF No. 238.

Defendants largely rely on *Nike Inc. v. E. Ports Custom Brokers, Inc.*, No. 11-04390, 2024 WL 150088 (D.N.J. Jan. 12, 2024) in support of their dual pre- and post-substitution requests for reimbursement.  The Court agrees with Plaintiffs, however, that the facts of that case are factually inapposite to instant case.  Despite the protracted litigation in this case, *Nike* was pending for nearly twice as long at the time the plaintiff sought the substitution and its request was opposed by the

defendants. 2024 WL 150088, at *1.  The plaintiff's need for a new expert also arose out of its original expert's declining health—who was eighty-two (82) years old at the time, plans to retire, and refusal to further engage with counsel. *See id.*  More critically, apart from his age, the expert withheld this information from counsel for months while simultaneously misrepresenting he was available and actively working. *See id.*  Ultimately, the *Nike* court granted the plaintiff's request subject to the following conditions: the substitute's findings and opinions were required to be substantially similar to those presented by the original expert; the defendants were provided with an opportunity to depose the substitute expert and to seek the expert's preclusion; and the plaintiff was required to pay reasonable fees and costs incurred by the defendants in connection with the substitute expert. *See id.* at *3.  Notably, the *Nike* court did not require the plaintiff to reimburse the defendants for any fees or costs associated with its original expert.

The Court is not persuaded by Defendants' argument that the *Nike* court's decision supports its request for reimbursement associated with prior expert discovery efforts.  Nor is it persuaded that the decision supports their request for reimbursement relating to Plaintiffs' substitute expert.[4] Unlike the facts at issue in *Nike*, Plaintiffs' need for a new expert was pure happenstance.  It arose out of a sudden accident that was entirely unforeseeable to Plaintiffs and Mr. Mooney.  The *Nike* plaintiff's need for a new expert arose from circumstances that were entirely foreseeable when you consider the expert's age.  Likewise, it is evidently apparent that Mr. Mooney did not withhold or otherwise delay in informing counsel because Plaintiffs' counsel provided the Court with notice of the accident the next month.  These are critical and material differences.  The Court, therefore, denies Defendants' application in its entirety.

---

[4] The Court must also note it is not persuaded by Defendants' "sunk costs" argument, which lacks any legal analysis or supporting authorities. *See* Defs.' Appl. at 5.

## III.  **CONCLUSION**

Accordingly, for all the foregoing reasons,

**IT IS HEREBY ORDERED** this **2nd** day of **June**, **2026**, that Defendants' application for reimbursement [ECF No. 189] is **DENIED**.

s/ Sharon A. King
SHARON A. KING
United States Magistrate Judge

cc:  Hon. Edward S. Kiel, U.S.D.J.